**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DYRAN DAVENPORT, | ) |
| | ) No. 3:25-cv-00330-rjc |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Robert J. Colville |
| | ) |
| DETECTIVE WILLIAM CHURILLA, | ) |
| SCOTT SCHUBERT, Chief of Police, TOM | ) |
| STANGRECKI, Chief of Police, and CITY | ) |
| OF PITTSBURGH, | ) |
| | |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge

Before the Court are the following motions filed by Plaintiff, Dyran Davenport: a "Notice and Clarification Regarding Conflicts of Interest, Mandatory Ethical Disclosures, and Resulting Prejudice to Plaintiff" (ECF No. 14); a "Notice and Clarification Regarding Conflicts of Interest, Ethical Violations, and Mandatory Default as a Matter of Law" (ECF No. 16); a Motion to Strike Defendants' Motion to Dismiss (ECF No. 19); a Motion to Strike Defendants' Reply (ECF No. 25); a "Notice of Clerk's Mandatory Ministerial Duty Under Fed. R. Civ. P. 55(a) and Motion to Compel Entry of Default" (ECF No. 26); a Request for Default as to all Defendants (ECF No. 27); and a Praecipe for Sum Certain and Non-Rebutted Claims (ECF No. 28). Also before the Court is the Motion to Dismiss (ECF No. 17) filed by Defendants, the City of Pittsburgh and Detective William Churilla. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331. The Motions have been fully briefed and are ripe for disposition.

1

I.    **Procedural History and Factual Background**

Plaintiff initiated this action with the filing of a Motion for Leave to Proceed in forma pauperis on October 3, 2025. ECF No. 1. This matter was originally assigned to the Honorable Stephanie L. Haines. On October 10, 2025, Judge Haines entered a deficiency order and administratively closed this action. ECF No. 3. On October 14, 2025, Plaintiff filed a Motion for Clarification (ECF No. 4), and on October 30, 2025, Plaintiff filed a Motion to Alter Judgment (ECF No. 6). On November 10, 2025, Judge Haines issued an order finding that Plaintiff had corrected certain deficiencies and, as a result, granted Plaintiff's Motion to Proceed in forma pauperis and directed the U.S. Marshals to serve the Amended Complaint on each Defendant. ECF No. 7.

On January 2, 2026, this matter was reassigned to the undersigned. On January 12, 2026, Defendants the City of Pittsburgh and William Churilla filed their waivers of service. ECF Nos. 12, 13. On January 13, 2026, Plaintiff filed his "Notice and Clarification Regarding Conflicts of Interest, Mandatory Ethical Disclosures, and Resulting Prejudice to Plaintiff." ECF No. 14. Also, on January 13, 2025, Plaintiff's Amended Complaint was docketed in light of the Court's grant of his Motion to Proceed in forma pauperis. ECF No. 15. On January 28, 2026, Plaintiff filed his "Notice and Clarification Regarding Conflicts of Interest, Ethical Violations, and Mandatory Default as a Matter of Law." ECF No. 16.

On February 27, 2026, Defendants City of Pittsburgh and Churilla filed their Motion to Dismiss (ECF No. 17) along with their Brief in Support (ECF No. 18). On February 27, 2026, Plaintiff filed his "Omnibus Brief in Opposition to Defendants' Motion to Dismiss and Counter-Motion to Strike ECF 17 & 18 for Untimeliness, Conflict of Interest, and Bad Faith." ECF No. 19. On March 5, 2026, Plaintiff filed a Supplement to his Motion to Strike. ECF No. 21. On March 10, 2026, Plaintiff filed a request for default as to Defendants Scott Schubert and Tom

2

Stangrecki.  ECF No. 22.  On March 11, 2026, the relevant service documents for Schubert and Stangrecki were filed on the docket.  ECF No. 23.  On March 12, 2026, Defendants City of Pittsburgh and Churilla filed their Reply in support of their Motion to Dismiss, which also addresses some of Plaintiff's other filings.  ECF No. 24.  On March 13, 2026, Plaintiff filed his Motion to Strike Defendants' Reply.  ECF No. 25.  On March 13, 2026, Plaintiff filed his "Notice of Clerk's Mandatory Ministerial Duty Under Fed. R. Civ. P. 55(a) and Motion to Compel Entry of Default."  ECF No. 26.  On April 20, 2026, Plaintiff filed his Request for Default as to all Defendants (ECF No. 27), his Praecipe for Sum Certain and Non-Rebutted Claims (ECF No. 28), and his Supplement to his Request for Default (ECF No. 29).

In the Amended Complaint, Plaintiff alleges that he was federally indicted on November 17, 2021 in the matter of *U.S. v. Davenport*, 2:21-cr-00480 (W.D. Pa.).  Am. Compl. ¶¶ 5, 10.  He further alleges that, despite Churilla knowing his location and employment, Churilla made no effort to serve the warrant, knock on Plaintiff's door, or contact Plaintiff's employers, and that, as a result, the police delayed his arrest until March 16, 2023.  *Id.* ¶¶ 5, 12, 14-15.   Plaintiff then remained incarcerated until April 3, 2024, when his criminal case was dismissed with prejudice. *Id.* ¶ 5.  Plaintiff alleges that the delay in arresting him resulted in the death of a key alibi witness, irreparably harmed Plaintiff's defense, and caused Plaintiff significant emotional, reputational, and physical injuries.  *Id.* ¶ 13.  Plaintiff further alleges that Schubert and Stangrecki, acting as supervisors, failed to ensure the execution of the warrant and failed to take action to correct systematic delays.  *Id.* ¶¶ 18, 19.  Plaintiff alleges the City of Pittsburgh maintained customs and policies that allowed for the unconstitutional delay, as well as due process and *Brady* violations. *Id.* ¶ 21.  Plaintiff brings claims for Section 1983 Due Process Violation against Churilla (Count I), Section 1983 Supervisory Liability against Schubert and Stangrecki (Count II), Section 1983

Municipal Liability against the City of Pittsburgh (Count III), and Malicious Prosecution and Fair Trial Violation against all Defendants (Count IV).

**II.    Notice and Clarification Regarding Conflicts of Interest, Mandatory Ethical Disclosures, and Resulting Prejudice to Plaintiff (ECF No. 14) and Notice and Clarification Regarding Conflicts of Interest, Ethical Violations, and Mandatory Default as a Matter of Law (ECF No. 16)**

Plaintiff has filed two "Notices," presented as motions on the docket, arguing that he has been prejudiced by Defendants' choice of legal counsel. ECF Nos. 14, 16. In these Notices, Plaintiff seeks, in sum, to disqualify defense counsel for the City and Churilla by arguing that it is a conflict of interest for defense counsel to represent both Defendants. Specifically, Plaintiff asks the Court to determine whether a conflict exists, whether such a conflict is waivable, and whether such a conflict has been properly waived. ECF No. 14 at 4-5. Additionally, Plaintiff seeks clarification as to whether defense counsel has final authority as to settlement. *Id.* at 5. Lastly, Plaintiff requests that the Court order defense counsel to clarify its representation as to each Defendant. *Id.* at 6. Outside of the above, Plaintiff generally asks whether collateral estoppel applies to this action and, if it does, whether the application of collateral estoppel creates a conflict of interest between Defendants. *Id.* at 6. Plaintiff's protestations are meritless. The motions at ECF Nos. 14 and 16 are therefore denied.

To begin, there are questions as to whether Plaintiff has standing to raise the issue of disqualification for opposing counsel. The Third Circuit has not addressed the issue, but many courts within the Third Circuit assume, out of an abundance of caution, that a Plaintiff does have such standing. *See Lake v. Brennan*, Civil No. 3:25-cv-00548, 2026 WL 401197, at *2-3 (M.D. Pa. Feb. 12, 2026) (collecting cases). As such, the Court will likewise assume *arguendo* that Plaintiff has standing.

4

Here, despite Plaintiff's request for further clarification, the record is clear that the City of Pittsburgh and Churilla are represented by the City of Pittsburgh Law Department, and that Schubert and Stangrecki have not appeared in this matter.  As such, there is no need for the Court to order defense counsel to clearly identify which defendants are represented by which attorneys and whether joint representation is at issue.  The record already speaks for itself on these issues.

As for Plaintiff's arguments that a potential conflict of interest exists in this matter, the Court disagrees that such a conflict exists. With respect to conflicts of interest involving current clients, the Pennsylvania Rules of Professional Conduct[1] provide:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2) the representation is not prohibited by law;
> >
> > (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> >
> > (4) each affected client gives informed consent.

Pa. R. Prof. Conduct 1.7.

---

[1] This Court has adopted the Pennsylvania Rules of Professional Conduct.  LCvR 83.3(A)(2).

The Third Circuit has explained that a district court "may disqualify an attorney only when 'disqualification is an appropriate means of enforcing the applicable disciplinary rule[,]' keeping in mind 'any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.'" *Jackson v. Rohm & Haas Co.*, 366 F. App'x 342, 347 (3d Cir. 2010) (quoting *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980)). "The moving party 'bears the burden of clearly showing that continued representation would be impermissible. Vague and unsupported allegations are not sufficient to meet this standard.'" *Griffin-El v. Beard*, No. Civ. A. 06-2719, 2009 WL 2929802, at *4 (E.D. Pa. Sept. 8, 2009) (quoting *Reg'l Employers' Assur. Leagues Voluntary Employees' Beneficiary Ass'n Tr. v. Castellano*, No. CIV A 03-6903, 2009 WL 1911671, at *2 (E.D. Pa. July 1, 2009)).

Plaintiff has not proffered any argument or evidence that satisfies his burden of demonstrating that there is a significant risk that defense counsel cannot adequately represent its clients in this matter. Rather, he has only made the sort of "[v]ague and unsupported allegations" that cannot support disqualification. Plaintiff essentially seems to argue that counsel cannot represent two parties who may each have liability, but this is not the rule. The represented parties are not directly adverse, and the Court is aware of no risk that their representation will be "materially limited" by the joint representation. *Cf.* Pa. R. Prof. Conduct 1.7(a). As such, there is no basis for the Court to disturb the choices that Defendants the City of Pittsburgh and Churilla have made about their representation. *See Jackson*, 366 F. App'x at 347.

Next, Plaintiff argues that there are questions as to Defendants' counsel's settlement authority in this matter. ECF No. 14 at 5. The exhibits that Plaintiff filed demonstrate that Defendants' counsel has engaged in settlement discussions with Plaintiff, and that they have explained to Plaintiff that any settlement award would be approved by City Council via legislation.

*See* ECF No.14-1 at 3-4.  Plaintiff may be frustrated that Defendants are unable or unwilling to approve a settlement according to his preferred timeline, but that does not mean that he has experienced prejudice.  In any event, parties have no obligation to negotiate settlement, so there has been no prejudice to Plaintiff.  *See Watson v. Nationwide Mut. Ins. Co. of North America*, No. 11-1762, 2012 WL 2159297, at *10 (E.D. Pa. June 14, 2012).

The Court will not make findings in response to Plaintiff's question about the potential applicability of the collateral estoppel doctrine.  *See* ECF No. 14 at 6.  If Plaintiff wishes to argue that preclusion applies to certain issues, he may raise that argument as appropriate, but this Court will not offer a legal ruling on preclusion based on Plaintiff's abstract request for "collateral estoppel clarification."  *See Hackett v. Metzger*, No. 16-741, 2019 WL 4751286, at *2 (D. Del. Sept. 30, 2019).

For the foregoing reasons, Plaintiff's motions at ECF Nos. 14 and 16 are hereby denied.

### III.    Motions to Strike (ECF Nos. 19, 25)

Plaintiff has moved to strike Defendants the City of Pittsburgh and Churilla (together, "Moving Defendants")'s Motion to Dismiss, as well as their Reply in support of their Motion to Dismiss.[2]  Plaintiff argues, in essence, that the Moving Defendants' Motion to Dismiss should be dismissed because: (1) it is untimely; (2) Moving Defendants' counsel is improperly conflicted; and (3) because Defendants have demonstrated bad faith.

As discussed *supra*, Plaintiff has offered no support for his argument that Moving Defendants' legal representation is impermissible due to a prejudicial conflict.  The Court declines

---

[2] Plaintiff styled the filing at ECF No. 19 as both his "Omnibus Brief in Opposition to Defendants' Motion to Dismiss" and as a "Counter-Motion to Strike ECF 17 & 18 for Untimeliness, Conflict of Interest, and Bad Faith."

to reexamine this meritless argument.  Plaintiff's remaining arguments are addressed in turn.  As Plaintiff has failed to offer support for his arguments, his Motions to Strike are dismissed, and the Court will consider the arguments raised in Moving Defendants' Motion to Dismiss.

### A.  Timeliness of Motion

Moving Defendants filed their Motion to Dismiss on February 27, 2026.  ECF No. 17. Plaintiff argues that this Motion to Dismiss was untimely because a response to his Second Amended Complaint was due by January 27, 2026, or two weeks after the amended complaint was filed.  *See* ECF No. 19 at 2 (citing F.R.C.P. 15(a)(3)).  Moving Defendants respond that they waived service of summons on December 29, 2025, and that they had 60 days from that date to respond to Plaintiff's complaint.  ECF No. 24 at 4 (citing F.R.C.P. 12(a)(1)(A)(ii)).

Moving Defendants are correct that their Motion to Dismiss was filed timely.  A review of the docket makes clear that Defendants City of Pittsburgh and Churilla waived service on December 29, 2025, and accordingly that their response under Rule 12 was due 60 days from that date.  *See* ECF Nos. 12, 13.  Sixty days from December 29, 2025 is February 27, 2026, which is the date when Moving Defendants filed their Motion to Dismiss.

Plaintiff reads Rule 15 to require Moving Defendants' response within 14 days, but Rule 15 is clear that upon amendment, Defendants may respond "within the time remaining to respond to the original pleading" when that time is longer than 14 days.  F.R.C.P. 15(a)(3).  Moving Defendants, when they waived service, were entitled to 60 days to respond to Plaintiff's complaint. Plaintiff's further amendments did not serve to truncate the response time for Moving Defendants. The Court thus finds that Moving Defendants' Motion to Dismiss was filed timely and declines to strike on this basis.

### B.  Bad Faith

8

Plaintiff appears to offer only one fact in support of his argument that Moving Defendants have litigated in bad faith such that their Motion to Dismiss should be struck.  In the brief filed with Moving Defendants' Motion to Dismiss, Moving Defendants refer to Plaintiff's Second Amended Complaint as "incoherent," which Plaintiff characterizes as "baselessly mock[ing] a *pro se* litigant."  ECF No. 19 at 3 (quoting ECF No. 18).  While this is no doubt strong language, counsel is expected to zealously advocate for their clients.[3]  *See* Pa. R. Prof. Conduct 1.3, Comment 1 ("A lawyer must [] act . . . with zeal in advocacy upon the client's behalf.").  And indeed, Plaintiff has similarly advocated zealously for his own position.  *See, e.g.*, ECF No. 19 at 2 (arguing that Moving Defendants "current dilatoriness obstructs justice and evidence preservation").  Moving Defendants' counsel's description of Plaintiff's complaint was not in bad faith.  Plaintiff has presented no evidence to support that Moving Defendants have litigated in bad faith such that their Motion to Dismiss should be struck.

### C.  Conclusion

Plaintiff's arguments in his Motions to Strike Moving Defendants' Motion to Dismiss and its related filings are meritless.  The Court will deny Plaintiff's Motions to Strike and will next consider the fully briefed Motion to Dismiss.

### IV.    Motion to Dismiss (ECF No. 17)

Defendants the City of Pittsburgh and Churilla moved to dismiss Plaintiff's Second Amended Complaint,[4] arguing that Plaintiff's claims were barred by the statute of limitations and

---

[3] The Court further notes that, as discussed at Section IV *infra*, Moving Defendants were correct that Plaintiff's Second Amended Complaint did not coherently state an entitlement to legal relief.

[4] Plaintiff now seems to object to Moving Defendants' characterization of the operative complaint as his "Second Amended Complaint."  *See* ECF No. 21 at 2; ECF No. 25 at 2.  Nonetheless, Plaintiff had previously referred to the complaint as such.  *See* ECF No. 19 at 2.  Moreover, the docket *does* reflect two amended complaints.  *See* ECF Nos. 2, 15.  As such, the Court refers to Plaintiff's complaint as his "Second Amended Complaint."  In any event, the Court

further that his complaint failed to state a claim consistent with the pleading requirements of Rule 12(b)(6).  Because Plaintiff has failed to plead the facts necessary to support his claims, they are dismissed.  For the reasons discussed *infra*, to the extent Plaintiff intended to assert Section 1983 claims for violation of his speedy trial right, Plaintiff's claims are dismissed with prejudice, as the remedy Plaintiff seeks is not available for such a violation.  However, to the extent that Plaintiff instead intended to assert Section 1983 claims for violation of a different constitutional right, such claims are dismissed without prejudice.  If warranted, Plaintiff may amend his complaint to address the issues identified herein.  Failure to file an amended complaint within 21 days will result in dismissal with prejudice.

At the outset, the Court notes that it will not construe Moving Defendants' Motion to Dismiss as a Motion for Summary Judgment.  Plaintiff contends that this is required because "Defendants' motion relies on matters outside the pleadings—specifically their own version of the criminal history which contradicts Judge Hardy's Order [in the underlying criminal proceedings]."  Br. in Opp. at 3.  On the contrary, Moving Defendants included Judge Hardy's order and opinion dismissing Plaintiff's charges as an exhibit to their Motion to Dismiss.  *See* ECF Nos. 17-1, 17-2.  Moving Defendants then quoted extensively from these filings in their recitation of the facts.  *See* Br. in Supp. at 3.  Because Moving Defendants do not go beyond the pleadings, the Rule 12 standard will apply.

Moreover, the Court acknowledges that Plaintiff's briefs appear to include at least one AI hallucinated citation.  Plaintiff has also made unsupported, and to the extent unsupportable, arguably outrageous allegations about Defendants and their counsel.  Notably, for example,

---

agrees with Moving Defendants that it is immaterial whether this is Plaintiff's first or second amended complaint. *See* ECF No. 24 at 1, n.1.

Plaintiff writes that Defendants and their counsel "caused the death" of an alibi witness in Plaintiff's underlying criminal case and, that they are currently engaged in efforts to create further delay as to "obstruct[] justice." ECF No. 19 at 2. Plaintiff has proffered and the Court has seen no evidence to suggest that either of these allegations is at all true. Plaintiff is sternly warned that he must confirm the accuracy of both asserted facts and law cited in his filings to this Court. The Court will not countenance inaccurate or inflammatory allegations.

### A. Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

11

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Third Circuit explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The Court further notes that Plaintiff is proceeding *pro se*, and, as such, he is entitled to liberal construction of his submissions in federal court. This means that the Court must liberally

12

construe the factual allegations of the complaint because *pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, the court should "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Further, *pro se* litigants are not free to ignore the Federal Rules of Civil Procedure. *Pruden v. Long*, Civ. A. No. 3:CV-06-2007, 2006 WL 3325439, *1 (M.D. Pa. Oct. 24, 2006).

### B. Discussion

### 1. Statute of Limitations

"[A] defendant may raise a limitations defense in a motion to dismiss," provided that "the plaintiff's tardiness in bringing the action [is] apparent from the face of the complaint." *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010). Each of the claims asserted in Plaintiff's Second Amended Complaint are brought under 42 U.S.C. § 1983. *See* Sec. Am. Compl. ¶¶ 23-27. Moving Defendants contend that these claims are barred by the applicable statute of limitations.

"The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)); *see also Pappert v. Borough of Bridgeville of Allegheny Cnty., Pa.*, No. 10-cv-1672, 2011 WL 197899, at *8 (W.D. Pa. Jan. 20, 2011). For claims arising in Pennsylvania, the applicable limitations period is, therefore, two years. *Kach*, 589 F.3d at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). The "cause of action accrues,

13

and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" *Id.* (quoting *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)). The inquiry is objective, asking when a reasonable person would have known of the injury. *Id.* The cause of action will ordinarily accrue "at the time of the last event necessary to complete the tort," which is "usually at the time the plaintiff suffers an injury." *Id.*

Here, Plaintiff asserts injuries stemming from the sixteen-month period between when he was indicted (November 17, 2021) and when he was arrested (March 16, 2023). *See* Sec. Am. Compl. ¶ 2 ("Plaintiff seeks compensatory and punitive damages for the unconstitutional 16-month delay between indictment and arrest"); *see also id.* ¶¶ 10-11. Moving Defendants contend that the injury was suffered by Plaintiff at the time of his arrest, and that accordingly the statute of limitations started to run on March 16, 2023. Br. in Supp. at 5. Plaintiff responds that his claim did not accrue until the underlying criminal proceedings were terminated in his favor. Br. in Opp. at 1. Because Plaintiff's criminal case was not dismissed until April 3, 2024, Plaintiff argues that the statute of limitations did not begin to run until that time. *Id.* at 2. Plaintiff initially filed his complaint on October 3, 2025. *See* ECF No. 1. As such, if Moving Defendants' interpretation is correct, Plaintiff's claims are time barred, but if Plaintiff is correct, his claims were timely filed.

The Court notes that Plaintiff appears to have cited an AI-hallucinated case in support of his argument on this point. *See* Br. in Opp. at 2 (citing the nonexistent case "*Loder v. City of Philadelphia*, 838 F.3d 311 (3d Cir. 2016)"). Nonetheless, Plaintiff has also cited relevant caselaw, and indeed, the Court finds that Plaintiff's interpretation is the better one.

A determination as to when a cause of action under Section 1983 accrued requires identifying "'the specific constitutional right' alleged to have been infringed" and then "referring

14

to the common-law principles governing analogous torts." *McDonough v. Smith*, 588 U.S. 109, 115-16 (2019) (quoting *Manuel v. Joliet*, 580 U.S. 357, 370 (2017)); *see also Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (courts should look to the common law of torts, including the claims' elements and applicable prerequisites for recovery, to determine applicable rules for Section 1983 liability). For claims seeking "damages for confinement imposed pursuant to legal process," the common law malicious prosecution claim is the closest available tort analogue. *Heck*, 512 U.S. at 484. A prerequisite for a malicious prosecution claim is "termination of the prior criminal proceeding in favor of the accused," and therefore the claim will not accrue until such a favorable termination. *Id.*; *see also McDonough*, 588 U.S. at 123 ("[T]he injury caused by a classic malicious prosecution [] first occurs as soon as legal process is brought to bear on a defendant, yet favorable termination remains the accrual date.").

Accordingly, the Court finds that Plaintiff's claims are most analogous to the common law tort of malicious prosecution,[5] and that they therefore did not accrue until he received a favorable termination of the underlying criminal proceedings. Plaintiff's favorable termination came on April 3, 2024. Sec. Am. Compl. ¶ 12. As such, Plaintiff's October 2025 complaint was filed within the applicable two-year statute of limitations.

Moving Defendants contend that Plaintiff's claims are in fact not brought based upon a malicious prosecution, but rather "based on the delay that resulted in his criminal charges being dismissed pursuant to speedy trial rules." Reply Br. at 1. However, due to the remedies sought by Plaintiff, the Court declines to construe his claims as seeking relief from speedy trial violations.

---

[5] The Court further notes that Plaintiff appears to argue that these are the claims that he sought to plead, as he cites *McDonough* and *Heck* for the proposition that "a § 1983 claim for Due Process and Fair Trial violations does not accrue until the criminal proceedings terminate in the defendant's favor." *See* Br. in Opp. at 1; *see also* ECF No. 21 at 2 (raising arguments about "the limitations period for malicious prosecution").

15

"The sole remedy for a violation of the speedy trial right [is] dismissal of the charges." *Betterman v. Montana*, 578 U.S. 437, 445 (2016). Plaintiff alleges that the charges relevant to his claim have already been dismissed, Sec. Am. Compl. ¶ 12, and he now seeks damages for both the period before he was arrested and the period during which he was incarcerated. *Id.* ¶ 28. Accordingly, as discussed, Plaintiff's claims are better analogized to the common-law malicious prosecution tort. *See Heck*, 512 U.S. at 484. The Court therefore concludes that Plaintiff's claims are not barred by the statute of limitations.

Moving Defendants concede that if Plaintiff's claims are determined to be Fourth Amendment Malicious Prosecution claims, then they are timely. Reply Br. at 2. However, they contend that Plaintiff's claims nonetheless fail and should be dismissed for failure to state a claim. Those arguments are assessed in turn.

### 2. *Monell* Claims Against the City of Pittsburgh

Moving Defendants next argue that each of Plaintiff's numerous claims against the City of Pittsburgh should be dismissed because Plaintiff has failed to allege facts sufficient to support municipal liability under *Monell*. Br. in Supp. at 6. Plaintiff fails to respond to this argument in his opposition brief.[6] Because Plaintiff has failed to allege facts to establish that the Defendant

---

[6] Plaintiff makes some argument in response in a Motion to Strike Moving Defendants' Reply brief. *See* ECF No. 25 at 3-4. Because Plaintiff was not entitled to a sur-reply, arguments made in this filing that were not addressed to Plaintiff's Motion to Strike were not properly before the Court. *See Sarker v. Citigroup Inc.*, No. 24-8517, 2025 WL 283148, at *2 n.3 (D.N.J. Jan. 7, 2025) (refusing to consider arguments raised in a sur-reply filed without leave of the court). Nonetheless, the Court finds Plaintiff's uncited argument that the City of Pittsburgh's mayor "admitted today (3/12/26) the City is in a 'state of crisis' and 'management failure'" to be unavailing. The context around these purported comments is not at all clear, and it is not evident to the Court that they have any relation at all to the City's policies and customs with respect to training and supervising its police officers. In any event, these facts are not included in Plaintiff's complaint and therefore cannot be considered in support of his claims. *See Cruz Next Friend of K.H. v. Loughman*, No. 20-cv-1490, 2021 WL 2156502, at *3 (D. Del. May 27, 2021) ("Plaintiffs' reliance on facts not alleged in the complaint is improper, and a complaint cannot be amended by a brief.").

16

City maintained a policy or custom that caused his injuries, his claims against the City of Pittsburgh are dismissed.

Section 1983 extends liability for civil rights violations to municipalities and other units of local government when their actions, by policy or custom, deprive a plaintiff of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) ("To plead a municipal liability claim, a plaintiff must allege that a local government's policy or custom inflicted the injury in question.") (alterations omitted). However, *respondeat superior* liability does not extend to municipalities; "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691. Municipal policy can be established by demonstrating that a decision maker with final authority to set municipal policy implemented "an official proclamation, policy, or edict." *Estate of Roman*, 914 F.3d at 798 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Custom is established when "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 919 F.2d 845, 850 (3d Cir. 1990)); *see also Davila v. Northern Regional Joint Police Bd.*, 730 F. Supp. 3d 498, 535 (W.D. Pa. 2019) ("The existence of a 'custom' can be established by showing that a final policymaker had knowledge of a widespread practice and acquiesced to it.").

To prevail on a *Monell* claim for failure to train police officers, a plaintiff must establish that the failure to train is the result of "deliberate indifference to the rights of persons with whom the police come into contact." *Estate of Roman*, 914 F.3d at 798 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is sufficiently pled by "showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation

17

involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (internal citations and alterations omitted).

Here, Plaintiff alleges that Defendant the City of Pittsburgh is liable under *Monell* because its customs and polices allowed: (1) "[u]nconstitutional delay in post-indictment arrests;" (2) "[f]ailure to train officers on due process and Brady obligations;" and (3) "[s]upervisory indifference to rights violations." Sec. Am. Compl. ¶ 21. Plaintiff has not pled facts sufficient to establish the existence of either a policy or custom supporting municipal liability.

### a. Official Policy or Custom

A "policy" supporting municipal liability exists when a policymaker has "issue[d] an official proclamation, policy, or edict" that led to the plaintiff's injury. *Estate of Roman*, 914 F.3d at 798 (complaint that "fail[ed] to refer to 'an official proclamation, policy, or [an] edict'" did not satisfy standard for municipal liability). "A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983. A pertinent decision by an official with decision-making authority on the subject constitutes official policy." *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020). However, "[t]o satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). An allegation that plaintiff's "rights were violated 'due to the City's policy of ignoring [constitutional] right[s]'" is not pled with sufficient specificity. *Id.*

Plaintiff makes conclusory allegations that the Defendant City has "maintained customs and policies" that made his injuries possible. *See* Sec. Am. Compl. ¶¶ 9, 21, 25. But Plaintiff refers to no particular policy that allegedly caused his injuries. *See Estate of Roman*, 914 F.3d at

18

798 (Plaintiff did not plead municipal policy when his "amended complaint fail[ed] to refer to 'an official proclamation, policy, or [an] edict'").  Though Plaintiff refers generally to policies in his complaint, he fails to make any factual showing to support the existence of a particular policy that harmed him.  *Wood v. Williams*, 558 F. App'x 100, 103-04 (3d Cir. 2014) (Plaintiff did not "identify any unlawful policy or custom" when she alleged that defendants had a "policy and/or custom … to inadequately screen during the hiring process and to inadequately train, retrain and/or supervise [] employees … thereby failing to adequately discourage Constitutional violations").  The Court next considers whether Plaintiff has alleged facts sufficient to establish a policy or custom through deliberate indifference.

### b.  Deliberate Indifference

Plaintiff further offers that *Monell* liability exists because the Defendant City has "maintained customs" allowing for unconstitutional delays, inadequate training, and inadequate supervision.  Sec. Am. Compl. ¶ 21.  According to Plaintiff, "[t]hese systemic failures constitute deliberate indifference."  *Id.* ¶ 22.

When a *Monell* plaintiff seeks to establish municipal liability by demonstrating that the municipality had a policy or custom of violating rights through its failure to train or supervise, the plaintiff must establish that "this failure amounts to deliberate indifference to the rights of persons with whom the municipality's employees will come into contact." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted).  This showing typically requires plaintiff to identify a "pattern of similar constitutional violations by untrained employees that puts municipal decision makers on notice that a new program is necessary." *Id.* (internal quotations omitted).  Otherwise, the plaintiff can show that the need for training or supervision was "so obvious" that a failure to adequately train or supervise reflects defendant's deliberate indifference.

19

*Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  Municipal liability in such cases "depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223-24 (3d Cir. 2014) (quoting *Bd. Of Cnty. Cmm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)).

Here, Plaintiff alleges deficient support for his theory that municipal liability is appropriate for failure to adequately train or supervise, as he has failed to establish a "pattern of similar constitutional violations."  In a section of his complaint titled "Supervisory Failures," Plaintiff explains that the Defendant City's police chiefs had "failed to ensure that warrant executions and post-indictment procedures were timely and constitutional." Sec. Am. Compl. ¶ 18-19.  However, though he referred to these failures as plural, his complaint only describes the alleged failure to follow post-indictment procedures in his own case.  *See* Sec. Am. Compl. ¶¶ 10-17.  Indeed, Moving Defendants rightly note that "Plaintiff fails to identify any facts, indictment[s], arrests, or cases outside of his own singular criminal case. . . He does not point to any other incidents at all." Br. in Supp. at 9.  Absent such fact assertions, Plaintiff cannot establish a pattern of violations to support *Monell* liability.  *See Thivener v. Nero*, No. 22-238, 2023 WL 4295826, at *2 (W.D. Pa. June 30, 2023) (Plaintiff "rely[ing] on the 'single incident' theory, *i.e.*, his own treatment" had "failed to claim that his alleged mistreatment 'was caused by an existing, unconstitutional [government] policy, which policy can be attributed to a . . . policymaker.'") (quoting *Wood v. Williams*, 568 F. App'x 100, 105-06 (3d Cir. 2014).

Plaintiff fares no better when considering whether the exception for "obvious" failures to train applies.  *See Johnson*, 975 F.3d at 403.  Plaintiffs must provide at least a "modicum" of factual support for their allegations; "[m]ere conclusory allegations. . .that the defendants

deliberately elected not to train are not enough to support a constitutional claim." *Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1116-17 (3d Cir. 1988). Plaintiff argues that police officers were not properly "train[ed]" or "supervise[d]. . . in accordance with Barker v. Wingo, due process standards, and departmental obligations." While it is, of course, obvious that police officers will be faced with situations implicating due process and speedy trial obligations, Plaintiff's broad allegations are not enough. Because Plaintiff has not alleged facts to support a finding that the Defendant City's policymakers should have known that their course of action was "likely" to result in constitutional violation, he has not established a policy or custom through deliberate indifference. *Johnson*, 975 F.3d at 403.

Plaintiff's allegation of a single constitutional violation does not create a pattern of constitutional violations. Further, he has failed to allege particular facts showing that the Defendant City failed to train or supervise, and that that failure created an obvious risk of constitutional violations. Therefore, Plaintiff has failed to plead facts sufficient to support *Monell* liability on a failure to train or supervise theory.

### c. Causation

In addition to establishing that the injurious conduct alleged can be properly attributed to a municipal policy or custom, a plaintiff asserting a *Monell* claim pursuant to Section 1983 must also "plausibly allege" that the policy or custom "was the proximate cause of [his] injuries." *G.S. v. Penn-Trafford Sch. Dist.*, No. 20-3281, 2023 WL 4486667, at *4 (3d Cir. July 12, 2023). Proximate causation requires the plaintiff to "demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's policy and the specific deprivation of constitutional rights at issue." *Id.* (quoting *Bielevicz v. Dubinon*, 919 F.2d at 850-51).

21

Because Plaintiff has failed to allege facts sufficient to support the existence of a policy or custom, as required by *Monell*, the Court declines to address whether Plaintiff has adequately pled causation. His claims against the City of Pittsburgh are dismissed without prejudice.

### 3. Claims Against Defendant Churilla

Moving Defendants next argue that Plaintiff's claims against Defendant Churilla suffer from three primary deficiencies. First, they contend that Plaintiff's claims are barred by the statute of limitations. Second, they argue that Plaintiff has "failed to state facts raising an inference of a constitutional injury as to a malicious prosecution claim." Third, they contend that claims against Defendant Churilla are barred by qualified immunity. Br. in Supp. at 13.

As discussed *supra*, with respect to the statute of limitations, the Court disagrees with Moving Defendants and holds that Plaintiff's claims are not time barred. Moving Defendants' remaining arguments with respect to the claims stated against Defendant Churilla are discussed in turn. Because Plaintiff has failed to allege the facts necessary to support a Section 1983 claim vindicating a malicious prosecution, his claims against Defendant Churilla are dismissed without prejudice.

### a. Failure to Allege Necessary Facts for Malicious Prosecution Claim

Moving Defendants argue that Plaintiff has failed to allege facts sufficient to support a malicious prosecution claim under Section 1983. Br. in Supp. at 12-13. Plaintiff does not respond in his opposition brief.[7]

"To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor;

---

[7] As discussed *supra*, the Court construes Plaintiff's claims as brought pursuant to Section 1983 for Fourth Amendment malicious prosecution violations, as a Section 1983 claim for speedy trial violations could not supply the remedies that Plaintiff seeks. *See Betterman*, 578 U.S. at 445.

(3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

Moving Defendants first contend that Plaintiff's malicious prosecution claim "should be considered moot because Plaintiff was essentially not prosecuted beyond his indictment and arrest, neither of which he claims to have caused injury." Br. in Supp. at 13. On the contrary, Plaintiff seeks damages not only from his indictment and his arrest, but also for his period of incarceration. *See* Sec. Am. Compl. ¶ 28. And Plaintiff alleges that his incarceration was caused by the indictment and arrest. *Id.* ¶ 2. Therefore, the Court finds that Plaintiff did allege an injury resulting from his indictment and arrest.

Nonetheless, Plaintiff's malicious prosecution claim fails because he has failed to plead the facts necessary to support his claim. For his claim to succeed, Plaintiff must plead that the proceeding against him was "initiated without probable cause." *Estate of Smith*, 318 F.3d at 521. In his complaint, Plaintiff alleges that he was federally indicted and provides a case number (2:21-cr-480) for the related criminal proceedings. Sec. Am. Compl. ¶ 5. A review of that case's docket reveals that Plaintiff was indicted by grand jury. *See U.S. v. Davenport*, No. 2:21-cr-480, ECF No. 3 (W.D. Pa. Nov. 17, 2021). "[A]n indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975). Though Plaintiff argues that Defendants were unconstitutionally delayed in acting post-indictment, his complaint alleges no facts to suggest that the underlying indictment itself was substantively unfair. Accordingly, based upon Plaintiff's

23

version of the facts, there was conclusively probable cause to support his arrest. He therefore cannot satisfy the third element of his malicious prosecution claim, and the claim fails.[8]

### b. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). A two-pronged inquiry is used to determine whether a police officer is entitled to qualified immunity. *Id.* First, the court must determine whether, when viewed in the light most favorable to the injured party, the facts show that the officer violated a constitutional right. *Id.* (citing *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017)). Second, the court determines whether the allegedly violated constitutional right was so clearly established as to be "'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001))). If either prong is answered in the negative, qualified immunity shields the officer from liability. *Id.*

Moving Defendants argue that Plaintiff cannot satisfy the first prong, and that therefore Defendant Churilla is shielded from liability by qualified immunity. Br. in Supp. at 14.

---

[8] Plaintiff also references *Brady* obligations, suggesting that he may instead be using Section 1983 as a vehicle to vindicate *Brady* violations. *See* Sec. Am. Compl. ¶¶ 21, 27. To prove a *Brady* violation, a plaintiff must establish a suppression of material evidence favorable to the defense, with materiality meaning that "had [the evidence] been disclosed, the result of the proceeding would have been different." *Boyle v. Evanchick*, No. 19-3270, 2020 WL 1330712, at *4 (E.D. Pa. Mar. 19, 2020) (quoting *Strickler v. Greene*, 527 U.S. 263, 282 (1999)). As the ordinary remedy for a *Brady* violation is retrial, it is not clear whether a plaintiff who prevailed in the underlying state criminal proceedings can ever successfully pursue a Section 1983 *Brady* claim. *See id.* (discussing *Smith v. Holtz*, 210 F.3d 186, 196 (3d Cir. 2000)). Regardless, Plaintiff has alleged no facts regarding the suppression of evidence, and because the charges against him were dismissed, it is not clear to the court how he could possibly establish prejudice attributable to withheld evidence. *See id.* (Plaintiff "[n]ecessarily" could not establish that suppression of evidence had affected the outcome of the criminal proceedings when charges in underlying criminal proceedings had been dismissed).

24

Specifically, Moving Defendants contend that Plaintiff did not plead facts to support that Defendant Churilla "violated [Plaintiff's] Fourth Amendment constitutional rights because, based on the indictment, there was probable cause to arrest Plaintiff." Br. in Supp. at 14. Because the Court has found that Plaintiff did not plead facts to support his claim, there is no need to decide whether Defendant Churilla would have also been protected by qualified immunity had Plaintiff properly stated a claim. *See Stafford v. Morris*, 816 F. App'x 712, 718 n.3 (3d Cir. 2020).

### 4. Conclusion

Plaintiff fails to allege facts that can support municipal liability against the City of Pittsburgh pursuant to *Monell*, or that can generally support a claim for malicious prosecution pursuant to Section 1983. Therefore, Plaintiff's claims against Defendants the City of Pittsburgh and William Churilla are dismissed. To the extent Plaintiff intended to assert a Section 1983 claim for violation of his speedy trial rights, such claims are dismissed with prejudice, as the relief that Plaintiff seeks is unavailable for such a violation. Plaintiff's Section 1983 malicious prosecution claims against the Moving Defendants are dismissed without prejudice. Plaintiff may amend his complaint to address the issues addressed herein within 21 days. Failure to amend within 21 days will result in dismissal with prejudice.

### V.   Notice of Clerk's Mandatory Ministerial Duty Under Fed. R. Civ. P. 55(a) and Motion to Compel Entry of Default (ECF No. 25)

In his Notice, Plaintiff requests that the Court compel the Clerk to enter default as to Defendants Scott Schubert and Tom Stangrecki. As set forth above, on November 10, 2025, Judge Haines entered an Order directing the Marshals to serve the Amended Complaint once Plaintiff returned the remaining service document, "Notice of a Lawsuit and Request to Waive Service of a Summons form." ECF No. 7. On March 11, 2026, the Marshals' "Process Receipt and Returns" were filed as to each Defendant. ECF No. 23. The Court understands that on December 19, 2025,

the Marshals mailed to Defendants Schubert and Stangrecki a Notice of a Lawsuit and Request to Waive Service of a Summons, Waiver of the Service of a Summons, the Complaint, and the Court's November 10, 2025 Order.  ECF No. 23.  On March 10, 2026, Plaintiff filed a request for entry of default as to Schubert and Stangrecki, arguing that they were served on February 13, 2026, and that they had failed to appear within the timeframe set forth in Fed. R. Civ. P. 12(a)(1)(A)(i).  ECF No. 22.  Plaintiff then filed the instant Motion to Compel Entry of Default on March 13, 2026.

The Court declines to compel the entry of default in this matter.  Rule 55(a) sets forth that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plea or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Here, Plaintiff has set forth no authority in support of his request that the Court compel the Clerk's office to enter default.  Further, Plaintiff has failed to show that default is appropriate in this matter.

While Plaintiff asserts that Schubert and Stangrecki were served on February 13, 2026, the only documentation he provides in support of this statement is a letter from the Marshals, dated February 13, 2026, indicating that four parties were served in this matter and setting forth the total amount due for service.  ECF No. 22-2.  This document is insufficient proof of service.  As such, the only proof of service is the service documents filed by the Marshals and addressed by the Court above.  *See* ECF No.  23.  These documents clearly indicate that all Defendants in this matter, including Schubert and Stangrecki, were mailed waiver of service forms as allowed for in Fed. R. Civ. P. 4(d).[9]

---

[9] This is further evidenced by the fact that the other Defendants in this case, the City of Pittsburgh and Detective William Churilla, filed waiver of service forms on January 12, 2026.  ECF Nos. 12, 13.

As waiver of service forms were sent to Defendants Schubert and Stangrecki, service could only be completed as to these defendants if they actually waived service. Here, there is no indication that Schubert or Stengrecki waived service in this matter, meaning they have not been properly served under Rule 4. Therefore, default is not proper, and the Court will deny Plaintiff's Motion to Compel the Entry of Default. In light of this Court's ruling, Plaintiff's Notice for the Entry of Default is moot.

**VI.    Request for Default as to All Defendants (ECF No. 27) and Praecipe for Sum Certain (ECF No. 28)**

Additionally, Plaintiff has filed a second Request for Default asking that the clerk of court enter default as to all Defendants. ECF No. 27. The Request for Default is denied as to Schubert and Stangrecki for the reasons discussed above. It is also denied as to the City of Pittsburgh and Churilla because said Defendants have appeared in this matter.

Further, Plaintiff has filed a praecipe for sum certain requesting that the marshals collect certain property from Defendants to satisfy the judgment in this action. ECF No, 28. This request is also denied. No final judgment has been entered in this action.

The Court also takes this opportunity to note that in his Praecipe for Sum Certain and in his Supplement to his Request for Default, Plaintiff refers to counsel for the City of Pittsburgh and Churilla as defendants to this action. Plaintiff did not name defense counsel as defendants to this action and, therefore, should not refer to defense counsel as defendants in future filings with the Court. Such behavior is not appropriate and is not an accurate representation of the facts before the Court.

**VII.    Screening of Amended Complaint**

With the instant Motions resolved, the Court additionally finds that Plaintiff's Amended Complaint should be dismissed as to Defendants Schubert and Stangrecki without prejudice, under

the Court's screening authority.    Plaintiff asserts in his Request for Default that this Court "previously screened the Amended Complaint (ECF No. 15) pursuant to 28 U.S.C. § 1915(e)(2)(B)" and that "[b]y granting IFP status and directing service by the U.S. Marshals, the Court has already determined that the Amended Complaint states a claim upon which relief may be granted." ECF No. 22-1.  However, these arguments are not valid.  When Judge Haines granted Plaintiff's Motion to Proceed In Forma Pauperis, she simply found that he was entitled to IFP status, not that his Amended Complaint survived the screening allowed for under § 1915(e).  *See* ECF No. 7 (finding that Plaintiff had "sufficiently carried his burden to show entitlement to IFP status" but also acknowledging that the Court "may dismiss a complaint under 28 U.S.C. § 1915(e)(2)(B) if the court finds that the complaint is frivolous or malicious or fails to state a claim upon which relief can be granted").  As such, because the Court has not previously screened Plaintiff's Amended Complaint, the Court's obligation to screen Plaintiff's Amended Complaint remains.  *See Pagliaroli v. New Jersey Dep't of Corrections*, Civ. No. 19-21505, 2023 WL 314352 (D. N.J. Jan. 19, 2023) (screening complaint as to defendant who had not yet been served/appeared in the case despite previously ruling on motions to dismiss filed by other defendants).  Separately, as discussed *supra*, the City of Pittsburgh and Detective Churilla have appeared and filed a motion to dismiss, and the Court has dismissed the claims asserted against them.

The Court's screening authority exists pursuant to the following standard: Pursuant to 28 U.S.C. §1915(a), Plaintiff requested and has been granted leave to proceed *in forma pauperis*. Thus, his allegations must be reviewed in accordance with the directives provided in 28 U.S.C. §1915(e).  Section 1915(e)(2), as amended, requires the federal courts to review complaints filed

28

by persons[10] who are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

"[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hawkins v. Coleman Hall, C.C.F.*, No. 11-3467, 2011 WL 5970977, at *2 (3d Cir. Nov. 30, 2011). Thus, under §1915(e)(2)(B), courts are "authorized to dismiss a claim as frivolous where 'it is based on an indisputable meritless legal theory or where the factual contentions are clearly baseless.'" *O'Neal v. Remus*, No. 09-14661, 2010 WL 1463011, at *1 (E.D. Mich. Mar. 17, 2010) (quoting *Price v. Heyrman*, No. 06-C-632, 2007 WL 188971, at *1 (E.D. Wis. Jan. 22, 2007) (citing *Neitzke*, 490 U.S. at 327)).[11]

In determining whether a complaint fails to state a claim upon which relief may be granted for purposes of Section 1915(e)(2)(B), courts apply the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *D'Agostino v. CECOM RDEC*, 436 F. App'x 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

---

[10] Although the Third Circuit has not ruled on the issue, several district courts in this Circuit have considered the question of whether this revised in forma pauperis statute applies only to people who are incarcerated and have concluded that it does not. *Leatherman v. Obama*, C.A. No. 12-1486, 2012 WL 5398912 (W.D. Pa. 2012) (Fisher, J.), *adopting R&R* 2012 WL 5398856 (W.D. Pa. October 22, 2012); *Harrison v. Shapiro*, No, 97–2133, 1997 WL 197950, at * 1 (E.D. Pa. 1997); *Jones v. North Atlantic Treaty Organization*, No. 98–1185, 1998 WL 136511, at *1 n. 1 (E.D. Pa.1998); *McAllen v. Attic Away From Home*, No. 00–941, 2000 WL 1752618, at *2 n. 7 (D. Del. 2000). Each of these courts has found the mention of the word "prisoner" to be a typographical error, and that the Congress meant the statute to read "person." The Court finds this reasoning persuasive. *See also, Anyanwutaku v. Moore*, 151 F.3d 1053 (D.C. Cir. 1998); *Mitchell v. Farcass*, 112 F.3d 1483, 1484 (11th Cir. 1997); *Powell v. Hoover*, 956 F.Supp. 564, 568 (M.D. Pa. 1997).

[11] Dismissal under Section 1915(e)(2) is "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering [frivolous] complaints," *Neitzke,* 490 U.S. at 324, or complaints that fail to state a claim on which relief may be granted.

550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The United States Court of Appeals for the Third Circuit has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In making this determination, the court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc*., 764 F.2d 939, 944 (3d Cir. 1985). "To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and §1915([e]) both counsel dismissal." *Neitzke,* 490 U.S. at 328 (footnote omitted).

Here, for the same reasons discussed in response to Moving Defendants' Motion to Dismiss *supra*, Plaintiff's operative complaint fails to state a claim against Defendants Schubert and Stangrecki. Plaintiff seeks compensatory relief from Defendants Schubert and Stangrecki pursuant to Section 1983. *See* Sec. Am. Compl. ¶¶ 24, 28. An action for damages for violation of Plaintiff's speedy trial right cannot be sustained. *Betterman*, 578 U.S. at 445. Likewise, the facts that

30

Plaintiff has alleged cannot support a claim for malicious prosecution or a claim for a *Brady* violation. *See Estate of Smith*, 318 F.3d at 521 (malicious prosecution claimant must establish that proceeding was initiated without probable cause); *Gerstein*, 420 U.S. at 117 n.19 (explaining that a fair indictment conclusively establishes that there was probable cause to support an arrest); *see also Boyle*, 2020 WL 1330712, at *4 (Plaintiff could not establish elements of Section 1983 claim for *Brady* violation when criminal charges in underlying proceeding were dismissed).  Plaintiffs' claims against Defendants Schubert and Stangrecki are therefore dismissed without prejudice.  If warranted, Plaintiff may amend his complaint within 21 days to address the issues with his claims against Defendants Schubert and Stangrecki that are discussed herein.

Because Defendants Schubert and Stangrecki did not waive service, service must be conducted in accordance with Rule 4(e).  Given the Court's November 10, 2025 Order and Fed. R. Civ. P. 4(c)(3), requiring service by the Marshals when plaintiff is in forma pauperis, this Court will order personal service by the Marshals, when appropriate.  Should Plaintiff provide the Court with copies of the Amended Complaint, Summonses, and a USM 285 form for both Schubert and Stangrecki within 21 days, the Court will issue further orders.  The time for service on the Defendants is hereby extended to allow for Plaintiff to provide the necessary service documents and, after the same, service by the Marshals.

## VIII.    Conclusion

For the reasons discussed above, the Court will deny Plaintiff's: Notice and Clarification Regarding Conflicts of Interest, Mandatory Ethical Disclosures, and Resulting Prejudice to Plaintiff (ECF No. 14); Notice and Clarification Regarding Conflicts of Interest, Ethical Violations, and Mandatory Default as a Matter of Law (ECF No. 16); Motion to Strike Defendants' Motion to Dismiss (ECF No. 19); Motion to Strike Defendants' Reply (ECF No. 25); Notice of Clerk's Mandatory Ministerial Duty Under Fed. R. Civ. P. 55(a) and Motion to Compel Entry of

Default (ECF No. 26); Request for Default as to all Defendants (ECF No. 27); and Praecipe for Sum Certain and Non-Rebutted Claims (ECF No. 28).  The Court will grant the Motion to Dismiss (ECF No. 17) filed by Defendants the City of Pittsburgh and Detective William Churilla and will dismiss the claims asserted against these defendants without prejudice.  Further, pursuant to the Court's screening authority, the Court will dismiss without prejudice the claims asserted in Plaintiff's Second Amended Complaint against Defendants Schubert and Stangrecki.  An appropriate Order of Court follows.

BY THE COURT:

*/s/  Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 12, 2026

cc: All counsel of record

Dyran Davenport
704 Clark St.
Johnstown, PA 15902